### SHIMOLA v. LOCAL BOARD NO. 42 FOR CUYAHOGA COUNTY et al.

No. 20737.

District Court, N. D. Ohio, E. D.

May 22, 1941.

Robert J. Selzer, of Cleveland, Ohio, for Shimola.

Emerich Freed, U. S. Atty., and Francis B. Kavanagh, Asst. U. S. Atty., both of Cleveland, Ohio, for Local Board #42 and Board of Appeals #8.

WILKIN, District Judge.

The petition prays for a writ of certiorari for the purpose of reviewing the actions of Local Board No. 42 and the District Board of Appeals of Cuyahoga County, and change of classification of the petitioner from I-A to III-A under the Selective Training and Service Act of 1940, Public, No. 783, 76th Congress; U.S.C.A. Title 50 Appendix, Section 301 et seq., and the rules and regulations promulgated with reference thereto.[1] Counsel for the defendant Boards filed a motion to dismiss upon the grounds that this court is without authority to entertain such a petition or to review the action of the defendant Boards.

That the United States District Courts are courts of limited jurisdiction is so generally recognized that citation of authority is unnecessary. The original jurisdiction of the District Courts is set forth in the Judicial Code, Section 24, amended, Section 41, Title 28 U.S.C.A. If such a case as this cannot find a place in the authorization of that Act or some special Act, the court is without jurisdiction.

Petitioner contends that authority to issue the writ sued for is given by Section 377, Title 28 U.S.C.A. That section, however, merely makes available to the District Courts "all writs not specifically provided for by statute, which may be necessary for the exercise of their respective jurisdictions", but it does not confer or expand jurisdiction.

It is true that subdivision (14) of Section 41 of Title 28 U.S.C.A. gives the district courts jurisdiction "Of all suits at law or in equity authorized by law to be brought by any person to redress the deprivation * * * of any right, privilege or immunity, secured by the Constitution * * * or of any right secured by any law of the United States providing for equal

---

[1] On October 16, 1940, petitioner registered under the provisions of the Selective Training and Service Act of 1940, and on November 14, 1940 returned his questionnaire to Local Board No. 42 for Cuyahoga County, situated in Lakewood, Ohio. In his questionnaire petitioner claimed a deferred classification by reason of the fact that his mother was dependent upon his physical labor for support, but on February 17, 1941 he was classified in Class I-A as immediately available for induction. On February 22, 1941, petitioner filed a written request that he be allowed to present personally his case to the local board, and accompanied his request with affidavits from other members of his family. The affidavits tended to show that except for $20 a week paid by two sisters for board at the mother's home, no sums were contributed by other members of the family. Petitioner's application, together with the affidavits, was referred to the District Board of Appeals by the Local Board, but on March 11, 1941, the District Board of Appeals unanimously declared petitioner to be without dependents and immediately available for induction.

Thereafter, on March 17, 1941, the local board was notified by letter of new grounds for deferment and change in petitioner's classification. By affidavits it was made to appear that petitioner had become engaged to one Helen Brezine after returning his questionnaire; that upon being informed of her pregnancy he had married her on February 5, 1941, and that she would shortly be totally dependent upon petitioner for support of herself and her child. It was stated that the marriage was not consummated for the purpose of evading the Draft Act, and that the matter had not been called to the attention of the local board solely in order to avoid humiliation of petitioner and his wife.

Local Board No. 42 received the affidavits on March 17, 1941, and the following day informed petitioner that it had "voted not to consider said affidavits or additional evidence for change of classification".

rights of citizens", etc. But that grant of authority is to be exercised only when the deprivation is "under color of any law, statute, ordinance, regulation, custom, or usage, of any State". The action of the Boards is under color of the national Selective Training and Service Act.

Furthermore, the petition in this case reveals that the petitioner has not yet suffered any deprivation of rights or immunities. As stated by Judge Galston in Re Petition of Arthur B. Soberman, D. C. Mar. 6, 1941, 37 F.Supp. 522, 523: "True, subdivision 14 gives the court jurisdiction to redress deprivation of civil rights, but such a suit is quite a different matter from one which seeks to review the act of an administrative board based merely on allegations of conclusions to be inferred from the facts before the board."

Thus it seems clear that the general grant of authority to district courts does not authorize consideration of such a suit as this.

Next we should inquire whether the law which authorized the action of the draft boards provided for any review by the district courts. An examination of the Selective Training and Service Act reveals that not only was no authority given for judicial review, but the action of the appeal boards was definitely made final, except in certain cases where an appeal to the President may be prosecuted: "The decisions of such local boards shall be final except where an appeal is authorized in accordance with such rules and regulations as the President may prescribe". (Sec. 10(2) par. 5.) See, also, "Selective Service Regulations, Volume Three—Classification and Selection", Section XXVIII, Par. 379, subdiv. 1.

The argument of petitioner's counsel bears directly upon the much mooted question of judicial review of administrative action generally. The growth of administrative agencies and the extension of administrative powers in recent years has created a feeling of urgent need for judicial review. Congress had provided for review of the orders of some administrative agencies in specified cases; but where it was not specifically allowed, it was considered not to exist. The proposal for such review generally has developed into a national issue, and its discussion has occupied prominent place on the agenda of professional and civic organizations. In response to general demand, the Congress enacted what was generally known as the Walter-Logan bill; but the measure failed to become law, however, because of executive veto. The arguments of petitioner in this case are consonant with the arguments in support of that enactment, but the history of that enactment precludes an assumption by this court of authority which that enactment attempted but failed to provide. It has been emphasized repeatedly that if the Anglo-American concept of due process of law, with all its connotations of "day in court", "impartial tribunal", "right to cross examine", etc., is to be preserved, some safeguard in the way of judicial review will have to be provided. But arguments in support of such policy should be directed to the law-making authorities. Courts should not be expected to usurp such power.

The Congress which passed the Walter-Logan bill also passed the Selective Training and Service Act, and did not provide therein for judicial review. Is it not to be presumed that such omission was intentional? Furthermore, is there not good reason for such omission in such law? Does not the national interest in present world conditions require prompt though drastic action? The civil rights which petitioner contends for are more violently assailed from without than from within. The very name of the rights which petitioner champions implies a limitation on their use: Civil rights have always been subject to military exigency. There is therefore no reason to superimpose judicial review upon the appeal allowed by the Selective Training and Service Act.

Counsel for petitioner cites cases which hold that courts will protect civil rights against arbitrary action by executive authorities. Such cases refer to such arbitrary conduct as "abuse of discretion", "fraudulent or capricious conduct", "ultra vires acts," etc. No doubt there are many remedies, such as injunction, quo warranto, habeas corpus with writ of certiorari, available to prevent unwarranted conduct by public officers. But courts will not substitute their judgment for the judgment of administrative officers exercised within the grant of their authority. Generally what is within the jurisdiction of the administrative agency is beyond the jurisdiction of the courts; it is only when acts are clearly beyond the grant of administrative authority that they come within the judicial authority. The petitioner here asks this court to review the facts presented to the Boards and to substitute its judgment for theirs as to the classification in which he is to be

placed. This court might disagree with the interpretation of the law made by the Boards in this case, or it might disagree with the different interpretation of the law made "By Authority of the President" in Appeal No. 14 from the decision of Board of Appeal No. 2, Local Board No. 18, Franklin County, Ohio, April 18, 1941; but it would be powerless to change either decision. Since the Boards acted within their grant of authority, this court, in the absence of specific authority to do so, cannot review the action of the Boards. The cases which arose with reference to the Draft Act of 1917, 50 U.S.C.A. Appendix § 201 et seq., support this view. Ex parte Platt, D.C., 253 F. 413; Angelus v. Sullivan, 2 Cir., 246 F. 54; In re Kitzerow, D.C., 252 F. 865; Boitano v. District Board, D.C., 250 F. 812; Ex parte Tinkoff, D.C., 254 F. 222; United States v. Stephens, D.C., 245 F. 956; Arbitman v. Woodside, 4 Cir., 258 F. 441.

Motion sustained.